UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL JOSEPH WIK,

                              Plaintiff,

                                                    DECISION AND ORDER

                                                    22-CV-6414DGL

          v.


THE VILLAGE OF HOLLEY, et al.,

                              Defendants.
_____


          Plaintiff Daniel Joseph Wik, who appears *pro se*, commenced this action by filing a

complaint on September 9, 2022.  Plaintiff has sued the Village of Holley, N.Y. ("Village"), the

Village of Holley Development Corporation ("VHDC"), and nine individual defendants.

Plaintiff asserts claims based on the United States Constitution and New York law, in connection

with certain events concerning real property that plaintiff alleges he purchased in Holley.

          The Village and seven of the individual defendants have moved for judgment on the

pleadings dismissing the claims against them pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  Plaintiff has filed a response in opposition to the motion.


                              **THE COMPLAINT**

          The complaint alleges the following facts.  On or about October 25, 2017, one April

Wollard (who is alleged to be a citizen and resident of Florida) sold a parcel of property

("Property") located at 89 Public Square in Holley to an individual named Freeman Burks, who

acted as trustee for an entity called 89 Public Square Trust.  In or about December 2017, 89

Public Square Trust sold the Property to plaintiff.  Plaintiff chose not to record the conveyance

with Orleans County.  Complaint (Dkt. #1) at 18, ¶¶ 2, 4, 9.

After plaintiff began making repairs to the building on the Property, he was contacted by

Ron Vendetti, who was apparently either an official or an employee of the Village.[1]  Vendetti

told plaintiff that plaintiff could not work on the building until he had recorded the deed and

obtained a permit from the Village.  *Id.* at 19, ¶¶ 16, 17.  Plaintiff alleges that Vendetti also "ran

off all of Claimants labors [sic]," and issued a stop-work order for all work at the Property.  *Id.* at

19 ¶¶ 20, 21.

Plaintiff contacted the Village offices and asked to speak to Brian Sorochty, who also

apparently held some position with the Village.[2]  He then received a telephone call from one

John Sansone, who also told plaintiff that he had to record his deed to the Property.  Plaintiff

informed Sansone that he was not legally required to do so.  *Id.* at 20, ¶¶ 27-30.

In May 2019, plaintiff "served notice to [the Village] for the fees for trespass and land

use." *Id.* ¶ 37.  The following October, he served James Defillips, Rochelle Moroz, Connie

Nenni and Kevin Lynch with "letters informing them of what was transpiring" with the Property.

*Id.* ¶ 38.

---

[1] Vendetti's name is sometimes spelled "Venditti" in the complaint, but it appears that the correct spelling is "Vendetti."

[2] With Sorochty, Vendetti and most of the other defendants, the complaint simply alleges that they were acting at all times as agents of the Village and that they were compensated for their services by the Village, without identifying what specific office or title they held.  At one point, however, the complaint does state that Sorochty "alleged he was the mayor" of Holley.  (Complaint at 22, ¶ 60.)

Plaintiff alleges, "[u]pon knowledge and information," that at some point Vendetti traveled to Florida and spoke to Wollard, the former owner of the Property.  Even though Wollard no longer had any legal interest in the Property, Vendetti allegedly pressured her into deeding the Property to VHDC.  Sansone–who apparently was the Village's attorney–recorded that deed.  *Id.* at 21, ¶¶ 41-54.  At some point thereafter, agents of the Village changed the locks on the building on the Property, and since then plaintiff has been denied possession and use of the Property, as well as of some personal property that he had stored in the building.

Plaintiff alleges that all the defendants, acting under color of law, conspired to deprive him of his property, in violation of his rights.  The complaint sets forth ten causes of action, the first six of which allege violations of plaintiff's rights under the Constitution:  (1) seizure of plaintiff's real property and (2) personal property without a warrant and without due process, in violation of the Fourth and Fifth Amendments; (3) search of plaintiff's real property and (4) personal property without a warrant, in violation "of at least" the Fourth Amendment; (5) cruel and unusual punishment, without due process, in violation of the Fourth and Eighth Amendments; and (6) deprivation of liberty and property without due process and in violation of plaintiff's right to equal protection under the Fifth Amendment.  The remaining four claims do not cite any constitutional provisions, and are apparently based on New York common law:  (7) a claim that plaintiff's "rights were trespassed upon"; (8) trespass to real property; (9) a claim (denominated as one for breach of contract) for "fees for trespass and land use"; and (10) a claim for "common law eject," alleging that plaintiff "has been denied use, access, and possession" of the Property.  For relief, plaintiff requests "fees for trespass and land use," damages in an unspecified amount, and an order of ejectment "against anyone at" the Property.

The present motion for judgment on the pleadings is brought by defendants the Village of Holley, Brian Sorochty, Ron Vendetti, John Sansone, James Defillips, Rochelle Moroz, Connie Nenni, and Kevin Lynch ("Village defendants").  The remaining three defendants, VHDC, Daniel Schiavone, and April Wollard, have answered the complaint but have not moved against it at this time.

## DISCUSSION

### I.  Motions for Judgment on the Pleadings under Rule 12(c)

Federal Rule of Civil Procedure 12(c) allows for any party to move for judgment "[a]fter the pleadings are closed–but early enough not to delay trial."  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Rusis v. Int'l Bus. Machines Corp.*, 529 F.Supp.3d 178, 190 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  Under that standard, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in [plaintiff's] favor."  *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).  The Court then must assess whether the complaint "contain[s] sufficient factual matter ... to state a claim to relief that is plausible on its face."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (quotations omitted).  Moreover, while at this stage the court must accept the truth of plaintiff's *factual* allegations, at the same time, "legal conclusions, deductions or opinions couched as factual allegations [need not be accorded] a presumption of truthfulness," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (alterations, brackets, and citation omitted).


## II.  Nature of Plaintiff's Claims

Before addressing the specific grounds asserted in defendants' motion, it is necessary to consider the nature of the claims presented in the complaint.

As stated, plaintiff's claims fall into two categories:  claims that defendants violated his rights under the United States Constitution, and claims under New York common law.  Jurisdiction is premised on this Court's jurisdiction over claims arising under the Constitution, *see* Complaint at 3.  *See also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

In their motion, defendants construe plaintiff's constitutional claims as brought pursuant to 42 U.S.C. § 1983.  Defendants contend that the claims are time-barred by the three-year statute of limitations period for § 1983 claims in New York.  *See James v. City of Rochester*, __ F.Supp.3d __, 2023 WL 3356931, at *10 (W.D.N.Y. 2023).

In response, plaintiff expressly states that he is not asserting any claims under § 1983.  *See* Dkt. #17-1 at 3 ("as a matter of fact [the complaint] is not a § 1983 Complaint"), 7 ("Claimants claim was not a 42 USC § 1983 action"), 10 ("Claimants Sixth cause of action is not

based upon 42 USC § 1983"), 11 ("Claimants causes of action are not brought pursuant to 42

USC § 1983").  Instead, he insists that his claims are brought under common law.  *See id.* at 3

(plaintiff "chose to asserted [sic] common law claims pursuant to the common law of the state of

New York"), 11 ("all the causes of action are common law claims").

      If the Court were simply to take plaintiff at his word, the complaint could be dismissed

summarily for lack of jurisdiction.  Federal courts generally do not have jurisdiction over claims

arising under state law, except when asserted along with federal claims, or in cases involving

citizens of different states, where the amount in controversy exceeds $75,000.  *See Lovern v.*

*Edwards*, 190 F.3d 648, 655 (4th Cir.1999) ("the Constitution does not contemplate the federal

judiciary deciding issues of state law among non-diverse litigants"); *Marett v. Ades*, No.

07-cv-4018, 2008 WL 2381698, at *4 (D.S.C. June 5, 2008) ("Federal courts are allowed to hear

and decide state-law claims only in conjunction with federal-law claims, through the exercise of

'supplemental jurisdiction'") (citing *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381,

387 (1998)).[3]

      Despite plaintiff's insistence that all his claims are brought under the common law, the

fact is that he alleges that defendants violated his rights under the United States Constitution.

Plaintiff may not bring claims against defendants directly under the Constitution, however.

Section 1983 "provides a cause of action against any person who deprives an individual of

federally guaranteed rights 'under color' of state law," *Filarsky v. Delia*, 566 U.S. 377, 383

---

[3] Although the complaint alleges that plaintiff "is not a citizen or resident of the State of New York,"
Complaint at 5, plaintiff does not allege that he is a citizen of some other state.  He alleges that "at all times relevant
to this complaint [he] is living within New York state," *id.*, and states that he "is one of the 'people of the state of
New York.'"  *Id.* at 17.  Plaintiff does not assert diversity of citizenship as a basis for jurisdiction, and there is
nothing in the record to suggest that such a basis exists.

(2012) (quoting 42 U.S.C. § 1983), and "when § 1983 provides a remedy, an implied cause of

action grounded on the Constitution is not available."  *Pauk v. Bd. of Tr. of City Univ. of New

York*, 654 F.2d 856, 865 (2d Cir. 1981).  *See*, *e.g.*, *Fenner v. City of New York*, 392 F.App'x 892,

894 (2d Cir. 2010) ("because ... a local government like the City can be liable under § 1983 for

violations of the Fourth Amendment, Fenner was required to bring his Fourth Amendment claims

under that statute, and could not proceed directly against the City under the Constitution") (citing

*Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)).

Nevertheless, "a court is obliged to construe [*pro se*] pleadings liberally, particularly

when they allege civil rights violations."  *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.

2004).  *See also Erickson v. Pardus*, 551 U.S. 89 (2007) (noting that *pro se* plaintiffs are entitled

to a more indulgent standard); *Buczek v. United States*, No. 15-CV-273, 2018 WL 2119587, at *2

(W.D.N.Y. May 8, 2018) ("[c]ognizant of the distinct disadvantages that pro se litigants face,

federal courts routinely read their submissions liberally and interpret them to raise the strongest

arguments they suggest").  Applying that standard here, the Court will read the complaint as

asserting constitutional claims pursuant to § 1983.  *See Johnson v. City of Shelby*, 574 U.S. 10

(2014) (plaintiff's failure to cite § 1983 was not fatal to complaint alleging violations of

plaintiff's rights under the Fourteenth Amendment).  Plaintiff may believe otherwise, but as

explained, the only other option would be for the Court to dismiss the complaint for lack of

jurisdiction.

### III.  Timeliness of the Complaint

The Village defendants contend that all of plaintiff's claims against them should be dismissed as time-barred.  In addressing this argument, the Court must separately consider plaintiff's federal and state law claims.

"[I]n New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Central Sch. Dist.*, __ F.4th __, 2023 WL 5281533, at *4 (2d Cir. 2023) (citing *Owens v. Okure*, 488 U.S. 235, 250-51 (1989), and *Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020)).  "Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim."  *Dunn v. Allen*, No. 23-CV-731, 2023 WL 6122714, at *2 (N.D.N.Y. Sept. 19, 2023) (citing *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)).

An additional wrinkle in this case is that at the outset of the COVID-19 pandemic, on March 20, 2020, then-New York Governor Andrew Cuomo issued Executive Order 202.8, which, as extended by subsequent orders, tolled New York's limitations periods from March 20 to November 3, 2020, a total of 228 days.  Federal courts in New York have applied that tolling to claims under § 1983.  *See*, *e.g.*, *Bell v. Saunders*, No. 20-cv-256, 2022 WL 2064872, at *5 n.6 (N.D.N.Y. June 8, 2022) ("the statute of limitations [on plaintiff's § 1983 claims], as tolled by Executive Orders, expired three years plus 228 days after the accrual date"); *Rich v. New York*, No. 21 CIV. 3835, 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022) ("The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period").

-8-

Defendants take the position that plaintiff's claims accrued when he became aware that the deed from Wollard to VHDC had been recorded with the Orleans County Clerk. Plaintiff does not appear to take issue with that assertion. Since the core of plaintiff's claims is that defendants "stole" his property from him by procuring a conveyance of the Property from Wollard–after she had already sold the Property to Burks, who sold it to plaintiff–the Court finds that the relevant date for limitations purposes is the date on which plaintiff learned that VHDC's deed had been filed with the clerk.

Section 291 of New York's Real Property Law provides that a "conveyance of real property ... may be recorded in the office of the clerk of the county where such real property is situated ...," but it does not require such recording. Under New York law, "title to property vests upon the execution and delivery of the deed, and the fact that the deed may not be recorded until a later date–or at all–does not affect the validity of the conveyance." *Tomhannock, LLC v. Roustabout Resources, LLC*, 149 A.D.3d 1219, 1221 (3d Dep't 2017).

Nevertheless, there can be serious consequences from a failure to record a deed. *See Tomhannock*, 149 A.D.3d at 1221 ("prudence would suggest that a grantee record his or her deed"). Section 291 further provides that "[e]very such conveyance not so recorded is void as against any person who subsequently purchases ... the same real property or any portion thereof, ... in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded." Under this "race-notice" statute, then, "an unrecorded conveyance is void ... against a subsequent purchaser in good faith who has paid valuable consideration and has no knowledge or notice of

the prior unrecorded conveyance." *80P2L LLC v. U.S. Bank Trust, N.A.*, 194 A.D.3d 593, 603 (1st Dep't 2021) (Renwick, J.P., concurring).

Although plaintiff alleges that the Village defendants knew that plaintiff was, or at least claimed to be the rightful owner of the Property at the time that they recorded VHDC's deed (which would defeat a finding of good faith for purposes of § 291), with respect to the accrual of his § 1983 claims, plaintiff's causes of action accrued when he became aware that the VHDC deed had been filed with the county clerk.  It was that act which, according to plaintiff, established that defendants claimed ownership of the Property, and effected their "stealing" of the Property from plaintiff.

It is not clear precisely when plaintiff first learned that the deed had been recorded, but it must have been sometime between February 12, 2019, the date on which the deed was recorded, *see* Dkt. #15-3, and May 3, 2019, when plaintiff signed a Notice of Claim in which he referenced the recording of VHDC's deed.  (Dkt. #15-2 ¶ 18.)

If plaintiff found out about VHDC's deed the day it was recorded, February 12, 2019, he would have had three years and 228 days from that date to file a claim, *i.e.*, the three-year limitations period for § 1983 claims plus the 228 days during which that period was tolled pursuant to the Governor's Executive Order.  *See Bowers v. City of Salamanca*, 20-CV-1206, 2021 WL 2917672, at *6 (W.D.N.Y. July 12, 2021) (concluding that plaintiff's § 1983 claim was timely because it was filed within 3 years and 228 days of accrual).  That would have given plaintiff until September 28, 2022 to commence this action.  The complaint was filed on September 29, 2022.

In response to defendants' motion, plaintiff states that he had no knowledge of the recording of the VHDC deed on the day it was recorded, but he does not state when he did learn of that fact. Indeed, throughout the complaint and his other papers, plaintiff provides no dates for most of the events that he describes. All he states in this regard is that he "did not have knowledge that a deed had been issued [to VHDC] until at least February 15, 2019." (Dkt. #17-1 at 4.) If he did find out about the deed on that date, that would have given plaintiff until October 1, 2022 to bring this action, and the action would be timely as to his § 1983 claims.

As the statute of limitations is an affirmative defense, on a motion to dismiss, "the defendant has the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely." *Egan v. Kennedy*, No. 04-CV-6626, 2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008). As noted, the same standards apply to motions for judgment on the pleadings. *See McGrath v. Dunecrest Condominium Ass'n*, No. 20-CV-656, 2023 WL 2865370, at *2 (N.D.Ind. Apr. 7, 2023) ("a motion for judgment on the pleadings based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense'") (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If the defendant meets that initial burden, the burden then shifts to the plaintiff to present facts showing that his claim falls within an exception to the statute of limitations. *Rouse v. Elliot Stevens, Ltd.*, No. 13-CV-1443, 2016 WL 8674688, at *3 (S.D.N.Y. June 24, 2016) (citing *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (2nd Cir. 1984)).

Although plaintiff certainly could have pleaded these matters with more specificity–in particular, by stating when or how he first found out about the existence and recording of

VHDC's deed–I cannot find that the complaint on its face indicates that his federal claims are untimely.  I therefore conclude that defendants have not carried their burden in that regard, and their motion to dismiss the federal claims as time-barred is denied.

The same is not true of plaintiff's state-law claims, however.  To allege common law tort claims against a municipality or its employees under New York General Municipal Law, the claimant must serve a notice of claim upon the municipality within ninety days after the claim arises, N.Y. Gen. Mun. Law § 50-e(1)(a), and the action must be brought "within one year and ninety days after the happening of the event upon which the claim is based."  Gen. Mun. L. § 50-i(c).  *See Cain v. County of Niagara*, No. 20-CV-1710, 2022 WL 616795, at *4 (W.D.N.Y. Mar. 2, 2022).  The general rule in federal court is that "state notice-of-claim statutes apply to state-law claims."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)).  These provisions "apply not only to claims against municipalities, but also to suits against officers, agents, or employees whose conduct caused the alleged injury."  *Wilburn v. City of Albany*, No. 13-cv-1452, 2014 WL 2532477, at *2 (N.D.N.Y. June 5, 2014); *accord Rossy v. City of Buffalo*, 17-CV-937, 2023 WL 5725283, at *14 (W.D.N.Y. Sept. 5, 2023).

Here, plaintiff timely filed a notice of claim.  The notice of claim states on the signature page, "Dated May 3, 2019," but immediately below that it states, "Affirmed to before me [sic] this 3 day of March, 2019," followed by the notary's signature and stamp.  (Dkt. #15-2 at 7).  Even if the May date is correct, the notice of claim would have been filed 77 days after the VHDC deed was recorded.

-12-

Again, plaintiff had one year and 90 days after the recording of the VHDC deed, *i.e.*, until May 12, 2020, to file a judicial action asserting his tort claims against the Village defendants. That period was tolled, though, by Executive Order 202.8.  As of the effective date of that order, March 20, 2020, plaintiff had 53 days remaining within which to bring an action.  The tolling effect of that order and its subsequent extensions lasted until November 3, 2020, at which time the limitations clock resumed running.  Fifty-three days later was December 26, 2020.  Since that date fell on a Saturday, plaintiff would have had to file an action no later than the following Monday, December 28, 2020.  His present action, filed in September 2022, was therefore untimely as to his state-law claims against the Village defendants, and those claims are dismissed as time-barred.

## IV. Plaintiff's Federal Claims

### A. Conspiracy Claims

Throughout the complaint, plaintiff repeatedly alleges that each defendant "conspired with others" (presumably meaning with each other) to deprive him of his rights.  Defendants assert that plaintiff has not adequately pleaded the existence of a conspiracy.

To analyze this issue, it must again first be determined what type of cognizable claim plaintiff's allegations might support, since he has eschewed reliance on any federal statutes. Among the most salient facts in that regard are that plaintiff alleges that most of the defendants (including all the Village defendants) were state actors, and that they acted under color of law. Plaintiff also alleges that defendants conspired to cause him harm, including by violating his constitutional rights (for example, by taking his property without due process of law).

Those allegations could conceivably support conspiracy claims under 42 U.S.C. §§ 1983 and 1985.  Although plaintiff insists that his claims do not arise under § 1983, there is no other way in which he could assert a viable conspiracy claim falling within the jurisdiction of this Court.

Both § 1983 and § 1985 create a right of action for civil rights conspiracies, but there are differences between the two.  To state a claim of conspiracy under 42 U.S.C. § 1983, a plaintiff must show "[i] an agreement between two or more state actors or between a state actor and a private entity; [ii] to act in concert to inflict an unconstitutional injury; and [iii] an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  "[A]bsent an underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012) (citation omitted).

Section 1985 does not require any of the participants in the conspiracy to have been a state actor, but it only applies to certain types of conspiracies.  Two of those–conspiracy to prevent a public officer from performing his duties, and conspiring to obstruct justice–plainly do not apply here.  The only aspect of § 1985 that might be relevant is the third category, conspiring to deprive a person or class of persons of their legal rights or privileges.

To state a claim under § 1985(3), the plaintiff must allege:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *United Bhd. of Carpenters &*

*Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  "As to the first of these elements, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"  *Doe v. Fenchel*, 837 F.App'x 67, 68 (2d Cir. 2021) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).

A § 1985(3) conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)).  "Requiring an invidiously discriminatory motive as an element of a § 1985(3) conspiracy prevents the statute from acting as a 'general federal tort law' applying to all allegedly tortious conspiratorial interferences with the rights of others."  *Jenkins v. Miller*, 983 F.Supp.2d 423, 458 (D.Vt. 2013) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  *See also Straker v. Metropolitan Transit Auth.*, No. 03-CV-1756, 2005 WL 3287445, at *3 (E.D.N.Y. Dec. 5, 2005) ("intentional discrimination must motivate the group" of conspirators).

Most of the allegations of conspiracy in the complaint in this case consist of boilerplate assertions that each defendant "conspired with others" to cause plaintiff's injuries.  *See, e.g.*, Complaint at 8, ¶ 36.  Plaintiff also alleges that defendants "have engaged in a conspiracy to deprive [plaintiff] of Constitutionally secured rights" to his property, and to steal his property, with full knowledge that he owned or had an interest in the Property and that Wollard had no transferable interest in the Property at the time she deeded it over to VHDC.  *Id.* at 22, ¶¶ 61-64.

The complaint further states that defendants "have conspired for the purpose of depriving [plaintiff] and/or others based on the class his nationality [sic] of the equal protection of the laws,

-15-

for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." *Id.* at 23, ¶ 71.

Outside of that, the complaint simply alleges various discrete actions taken by the individual defendants. Plaintiff alleges that all the individual Village defendants had some connection to the Village government, but there are no allegations suggesting that they were working in concert or that they came to some agreement to work together toward an unlawful goal. Plaintiff's allegations are therefore insufficient to state a claim.

"It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation and internal quotation marks omitted). *See also Fenchel*, 837 F.App'x at 68 ("naked assertions" of conspiracy "devoid of 'further factual enhancement' are insufficient to give rise to a plausible entitlement to relief") (quoting *Ashcroft v. Iqbal*, 556 U.S. 678 (2009)) (additional internal quote omitted); *L.K. v. Sewanhaka Central High Sch. Dist.*, 641 F.App'x 56, 59 (2d Cir. 2016) (affirming dismissal of § 1985 conspiracy claim "because plaintiffs have ... failed to plead facts supporting their conclusory assertion that defendants had an 'express understanding or tacit agreement'").

For that reason, plaintiff's conspiracy claims, whether construed as § 1983 or § 1985 claims, fail. Plaintiff has liberally sprinkled the *words* "conspiracy" and "conspired" throughout the complaint, but it is not enough simply to allege an assortment of individual acts and events, and to assert that a conspiracy underlay them. Plaintiff must allege some particular facts from which it could plausibly be inferred that defendants had entered into an agreement to achieve

-16-

unlawful ends.  He has not done so.  *See Fenchel*, 837 F.App'x at 68 ("To be sure, [plaintiff] alleges throughout his amended complaint both that [defendants] conspired to deprive him of his constitutional rights[,] ...  [b]ut he fails to plead any facts in support of these conclusory allegations").

Despite plaintiff's insistence that he has not asserted any claims under § 1983, and his failure even to mention § 1985, the wording of his allegation that defendants, "being two (2) or more persons have conspired for the purpose of depriving [him] and/or others based on the class his nationality of the equal protection of the laws, for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws" seems to be taken directly from § 1985(3).[4]

As stated, such claims require an allegation of some class-based animus.  The complaint's only allegation in that regard is the single reference to plaintiff's "nationality."  It is not clear what plaintiff means by that, but regardless of what it means, plaintiff has alleged no facts to suggest that defendants were motivated in any way by animus toward plaintiff on account of his nationality, race, or membership in some particular class.[5]  Even giving his allegations the most

---

[4] Section § 1985(3) provides in part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

[5] Although in his response to defendants' motion plaintiff takes issue with defendants' statement that "Plaintiff defines himself as a sovereign citizen," *see* Dkt. #15-4 at 9; Dkt. #17-1 at 7, there are suggestions in the complaint that he has rather idiosyncratic notions concerning governments and governmental authority.  He states, for example, that although his mailing address is in New York, it "is not a part of the corporation known as: 'THE UNITED STATES GOVERNMENT', and therefore said location cannot be represented by corporate state or federal

generous constructions, plaintiff has alleged no more than that defendants wrongfully deprived

him of his property.  None of his allegations indicate that any class-based animus had anything to

do with that.  *See Mingo v. Augustyn*, No. 19-CV-211, 2021 WL 2446856, at *15 (W.D.N.Y.

June 16, 2021) (concluding that plaintiff's § 1985(3) conspiracy claim should be dismissed

because plaintiff "failed to offer any evidence that he was targeted because of his race or that

defendants' conduct was motivated by some racial or perhaps otherwise class-based, invidious

discriminatory animus") (cleaned up); *Jianjun Li v. Village of Saddle Rock*, No. 20-cv-2289,

2021 WL 1193618, at *10 n.3 (E.D.N.Y. Mar. 30, 2021) (finding that plaintiff failed to allege a

conspiracy, but adding, "A related issue, unraised by the parties, is a dearth in non-conclusory

allegations that an invidious discriminatory animus motivated the conspirators"); *Masri v.

Thorsen*, No. 17-CV-4094, 2020 WL 1489799, at *8 (S.D.N.Y. Mar. 27, 2020) (plaintiff's "mere

assertion" of animus, absent any "fact-specific allegations of a causal link between defendants'

actions and plaintiff's religion," was insufficient to support § 1985(3) claim).[6]

    The Court also notes that although plaintiff does not expressly assert a conspiracy claim

under 42 U.S.C. § 1986, to the extent that the complaint could be read as asserting such a claim,

the claim would also fail because a violation of § 1986 may proceed only if a plaintiff is able to

─────────────────

zone locators like, zip codes ... ."  Complaint at 4 ¶ 6. He also states that he "is living within New York state, and
has done so for several years," but that he "is not a citizen or resident of the State of New York."  *Id.* at 5 ¶ 2.  He
further asserts that the Village has no authority over him "unless [he] voluntarily consents."  *Id.* at 17 ¶ 55.  These
statements may offer some insight into what plaintiff means by his "nationality," but as explained, that is ultimately
of no consequence, because he has not alleged facts indicative of animus on defendants' part.

    [6] For similar reasons, there is no basis in plaintiff's allegations for a substantive equal protection claim.
Plaintiff has not alleged that defendants acted with a discriminatory purpose, or that he was treated differently from
similarly-situated persons.  *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("liability for an Equal
Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with
discriminatory purpose"); *Reid v. City of New York*, No. 20 Civ. 9243, 2022 WL 2967359, at *17 (S.D.N.Y. July 27,
2022) ("Generally, to state an equal protection claim, a Section 1983 plaintiff must prove that he, compared with
others similarly situated, was selectively treated") (cleaned up).

establish a predicate claim under § 1985.  *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d

Cir. 2000).

### B.  Eighth Amendment

Plaintiff's fifth cause of action alleges that plaintiff "was punished and forced to suffer

mental and emotional cruel and unusual punishment in violation of Claimant's right to due

process of law secured from government and State violation in direct violation of the Fourth and

Eighth" Amendments.  Complaint at 26.

The Eighth Amendment's proscription of cruel and unusual punishments applies only to

convicted prison inmates.  *See Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989); *United States v.*

*Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).  Although the Due Process Clause of the Fourteenth

Amendment provides similar protections to persons who have not been convicted of a crime, *see*

*Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it still generally applies only to persons in

custody or confinement, such as pretrial detainees; *see, e.g.*, *Wimbush v. Conway*, 768 F.App'x

958, 968 (11th Cir. 2019); *Esmont v. City of New York*, 371 F.Supp.2d 202, 217 (E.D.N.Y.

2005).  *See also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (stating that because pretrial

detainees have not been convicted of a crime, they "may not be punished in any manner–neither

cruelly and unusually nor otherwise").  Plaintiff does not fall into that category, and he has not

alleged that he was personally subject to any governmental custody in connection with these

events.

In any event, such claims still require a showing of state conduct involving an

unreasonable risk of serious harm to the plaintiff's health or safety.  *Darnell*, 849 F.3d at 35;

*Murrell v. Sheron*, No. 21-CV-6576, 2023 WL 1970487, at *4 (W.D.N.Y. Feb. 13, 2023).  No

such facts have been alleged here.  Although plaintiff has alleged that defendants took actions

that harmed him in some way, none of those actions even approached the sort of cruelly harsh or

punitive conduct proscribed by the Eighth and Fourteenth Amendments.


### C.  Due Process

Each of plaintiff's federal claims alleges that the particular wrongs and deprivations

asserted in those claims were effected without due process of law.  Plaintiff alleges that both his

personal and real property were searched and seized without due process of law.  He also alleges

that he was deprived of liberty and property without due process.

To state a claim for deprivation of the Fourteenth Amendment right to procedural due

process, a plaintiff must establish that he (1) possessed a protected liberty or property interest and

(2) faced a deprivation of that interest without constitutionally adequate process.  *See O'Connor

v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005).  "In adjudicating due process claims," therefore,

courts "consider two distinct issues:  1) whether plaintiffs possess a liberty or property interest

protected by the Due Process Clause; and, if so, 2) whether existing state procedures are

constitutionally adequate."  *Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 190 (2d

Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

At the pleading stage, the Court finds that plaintiff has adequately alleged a protected

property interest, inasmuch as he alleges that he had purchased and was the rightful owner of the

real property, and that he had stored some personal property inside the building there.  The

question to be decided, then, is whether he has alleged facts showing that state procedures were either nonexistent or were constitutionally inadequate.[7]

In assessing the adequacy of state procedures, the nature of the acts giving rise to the claim must also be considered. "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic American Neighborhood Action Committee v. City of New York* ("*HANAC*"), 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation omitted).

Although "[t]he distinction between random and unauthorized conduct and established state procedures" is not always "clear-cut," *id.*, ultimately, "[t]he underlying question is 'whether the state [was] in a position to provide for pre-deprivation process.'" *Polito v. City of New York*, No. 15-CV-2301, 2017 WL 6542457, *2 (E.D.N.Y. Dec. 21, 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 534 (1984)). When a plaintiff alleges that the deprivation of a property interest resulted not from the application of some prescribed state procedures, but from the unlawful acts of individual government actors, "there is no reasonable way that the state can provide

---

[7] It is not clear what liberty interest plaintiff asserts, but since he has sufficiently pleaded a protected property interest, the Court need not decide whether he has also pleaded a protected liberty interest.

pre-deprivation process." *Grune v. Hernandez*, No. 22-CV-857, 2023 WL 6065944, at *5

(N.D.N.Y. Sept. 18, 2023) (quoting *Polito*, 2017 WL 6542457, at *2).

In the case at bar, although plaintiff alleges that the Village "has a policy and custom

under color of law of seizing property without due process of law," Complaint at 6, ¶ 14, he does

not allege that defendants' unlawful seizure of his property was effected pursuant to established

state procedures. Rather, he alleges that the defendants individually, unlawfully and without

legal authority stole his property by recording what was in effect a fraudulent deed. That conduct

can only be described as "random and unauthorized" by the state actors involved.

The Court of Appeals for the Second Circuit "ha[s] held on numerous occasions that an

Article 78 proceeding is a perfectly adequate postdeprivation remedy" in such situations.

*HANAC*, 101 F.3d at 881 (citing cases). *See also Rivera-Powell*, 470 F.3d at 466 (when

challenged conduct is random and unauthorized, "the existence of a meaningful post-deprivation

remedy ... would automatically satisfy procedural due process"); *Locurto v. Safir*, 264 F.3d 154,

175 (2d Cir. 2001) ("An Article 78 proceeding ... constitutes a wholly adequate post-deprivation

hearing for due process purposes").

In response to defendants' motion, plaintiff contends that "[a]n Article 78 proceeding has

no application in this instance as there was no administration action or decision to be reviewed."

(Dkt. #17-1 at 10.) That assertion is belied by plaintiff's own factual allegations, which allege

discrete acts by Village officials and employees to assert VHDC's ownership of the Property,

including physically entering the Property and changing the locks on the building, and recording

VHDC's deed. A review of New York case law indicates that such actions are subject to review

under Article 78. *See*, *e.g.*, *Wilson v. Inc. Village of Hempstead*, 173 A.D.3d 1050 (2d Dep't

2019) (proceeding pursuant to Article 78 "for a judgment declaring that 14 deeds conveying certain real property from [one defendant to another] are null and void"); *Egloff v. Town of Lewisboro*, 89 A.D.3d 792 (2d Dep't 2011) (describing action as a "proceeding pursuant to CPLR article 78, in effect, to compel the Town of Lewisboro and Joann Vasi, Enforcing Officer of the Town of Lewisboro, to set aside the transfer of a deed to real property previously owned by the plaintiff/petitioner"); *Nick Guttman, Inc. v. Vines*, 63 A.D.2d 998 (2d Dep't 1978) (proceeding pursuant to Article 78 to, *inter alia*, "compel the Town of Clarkstown to return to petitioner the property seized by it and (2) vacate and set aside the town's recordation of a certain deed to petitioner's property").

Thus, plaintiff did have a post-deprivation remedy available to him.  That he did not avail himself of it is of no moment for due process purposes.  *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) ("[a]n Article 78 proceeding provides the requisite post-deprivation process–even if [a plaintiff] failed to pursue it").  Likewise, "[e]ven if an Article 78 proceeding would no longer be available, the fact that it was previously available satisfies the requirements of due process." *Porter v. Town of Fine, N.Y.*, No. 18-CV-1289, 2022 WL 4094516, at *6 (N.D.N.Y. Sept. 6, 2022).  *See also Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 n. 6 (2d Cir. 1988) (stating that "the fact that Article 78 may not now be available" to the plaintiff, because it would be time-barred would not affect the court's conclusion that plaintiff was afforded due process, "because [plaintiff] had available an Article 78 remedy whether she timely utilized it or not").

The same principle applies to plaintiff's claim that defendants took his personal property that he had stored inside the building on the Property, without due process of law.  As to such

claims, "a plaintiff may bring a state law claim for negligence, replevin or conversion with the

Court of Claims." *Wahid v. Mogelnicki*, 406 F.Supp.3d 247, 249 (E.D.N.Y. May 17, 2017)

(citing *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)).  *See also Stegemann v. State*, 163

A.D.3d 1302, 1304 (3d Dep't 2018) (holding that Court of Claims properly dismissed claim for

negligent destruction of property, since claimant failed to raise a triable issue of fact regarding

whether law enforcement officers negligently destroyed his property during search).  Thus, an

adequate post-deprivation remedy was available to plaintiff for that alleged deprivation as well.

*See Suren v. City of New York*, No. 19-CV-2659, 2022 WL 5414377, at *21-*22 (E.D.N.Y. Aug.

8, 2022) ("As Plaintiffs have not alleged that they pursued such adequate post-deprivation

remedies[ such as bringing an action in the Court of Claims], their deprivation of property claims

fail as a matter of law"), *Report and Recom. adopted in part and modified on other grounds in

part*, 2022 WL 4466098 (E.D.N.Y. Sept. 26, 2022); *Alloul v. City of New York*, No. 09-CV-7726,

2010 WL 5297215, at *6 (S.D.N.Y. Dec. 21, 2010) (dismissing plaintiff's due process claim

based on the towing and subsequent destruction of plaintiff's car because "plaintiff failed to

utilize a constitutionally adequate post-deprivation remedy, *i.e.*, pursue a State court action based

on negligence or conversion").

Plaintiff also alleges the existence of "a pattern and practice that is condoned by

VILLAGE Board/Council/Trustees to allow VILLAGE to have people who are not titled to

posses [sic] the office pretend to be public officers while obtaining unjust benefit, gain, and

enrichment while attempting to exercise authority that is without VILLAGE and to violate

Constitutionally secured rights in an enterprise of corruption."  Complaint at 24, ¶ 75.  The basis

for that assertion is plaintiff's allegation that "some [defendants] hold out to be public officers

but have failed meet all the requirements to be entitled to perform the duties of their respective offices by failing to comply with New York County Law §400(5)."  Complaint at 23, ¶ 72.

By its terms, New York's County Law only applies to counties, not to villages or other municipalities within a county.  *See* County L. § 2.  Thus, the statute relied on by plaintiff (which relates to the certification of elected or appointed county officials) has no relevance to this case. In any event, plaintiff's allegation that some or all of the individual Village defendants are not legitimate officeholders, or that they "pretend" to be Village officers, does not plausibly allege any violation of plaintiff's due process rights.

Finally, to the extent that plaintiff asserts a substantive (as opposed to procedural) due process claim based upon defendants' alleged theft of his property, his claim is subject to dismissal as duplicative of his claims under the Fourth and Fifth Amendments, which are discussed below.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Ashby v. Murphy*, No. 17-CV-1099, 2022 WL 18135242, at *9 (W.D.N.Y. Nov. 28, 2022); *Dvortsova v. City of Philadelphia*, 585 F.Supp.3d 723, 731 (*E.D.Pa.* 2022).

For all the reasons stated above, plaintiff has not stated a facially valid claim for denial of procedural or substantive due process.  All of his due process claims are therefore dismissed.

### D.  Fourth Amendment

Plaintiff alleges that both his real property and personal property were searched and seized from him by the Village in violation of the Fourth Amendment.  In support of their motion for judgment on the pleadings, the Village defendants focus on the "search" aspect, asserting that plaintiff has failed to allege that a search occurred.  Plaintiff responds that a search can be

inferred, since defendants took possession of the Property and presumably have gone through the interior of the building.

After reviewing the complaint, however, I believe that the "seizure" aspect of the Fourth Amendment is more significant and relevant to plaintiff's factual allegations.  I also conclude that, applying the standards applicable to Rule 12(c) motions, plaintiff has sufficiently alleged that defendants have seized his property to state a claim under the Fourth Amendment.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Although Fourth Amendment issues most often arise in the context of criminal matters, "[t]he Fourth Amendment applies not only to governmental searches and seizures in criminal investigations, but also in various civil proceedings."  *McCabe v. Life-Line Ambulance Serv.*, 77 F.3d 540, 544 (1st Cir. 1996) (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 69-71 (1992), and *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987)).  *See also City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010) (Fourth Amendment's guarantees apply "without regard to whether the government actor is investigating crime or performing another function").

The touchstone of the Fourth Amendment is reasonableness.  *See United States v. Knights*, 534 U.S. 112, 118 (2001).  A seizure of private property without a warrant, absent exigent circumstances or probable cause, is "presumptively unreasonable."  *United States v. Place*, 462 U.S. 696, 701 (1983).  "If a possessory interest is established in the seized property, a court must then determine whether the seizure was reasonable under the Fourth Amendment by balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine

whether the totality of the circumstances justified the particular sort of seizure.'"  *Newsome v. Bogan*, 617 F.Supp.3d 133, 147-48 (W.D.N.Y. 2022) (citing *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)).

In many cases, there will be no dispute that the government has seized an individual's property; in that instance, the court's focus will be on whether the seizure was reasonable.  In the case at bar, however, it is not certain that plaintiff's property was seized, since there appears to be an underlying dispute about the ownership of the Property.  If the Village or VHDC legitimately purchased the Property from the previous lawful owner, then it is difficult to see how defendants could be said to have seized *plaintiff's* property, or how any such seizure could be deemed unreasonable.  The fact remains, however, that plaintiff alleges that he lawfully purchased the Property and that at the time Wollard deeded the Property to VHDC, she had no interest in the Property to convey.  On a Rule 12(c) motion, the Court must accept the truth of that allegation.

It also must be borne in mind that a seizure of property occurs within the meaning of the Fourth Amendment "when there is some meaningful interference with an individual's *possessory* interests in that property."  *Jacobsen*, 466 U.S. at 113 (1984).  Even if plaintiff's alleged purchase of the Property from 89 Public Square Trust were somehow invalid or void, he may still have had a possessory interest in the Property.  If so, then defendants' act of taking possession of the Property would have deprived plaintiff of his possessory interest, and may have constituted a seizure for purposes of the Fourth Amendment.

The Court cannot and does not find at this point that plaintiff *did* have a possessory interest in the Property, but it bears repeating that this action is still at the pleading stage, and that in deciding defendants' Rule 12(c) motion, the Court is obliged to assume the truth of plaintiff's

-27-

allegations.  Plaintiff's allegations that he had keys to the building, that he stored personal items

inside (which have not been returned to him), and that he had hired workers to begin making

repairs to the structure, if true, would all support plaintiff's assertion that he had at least a

possessory, if not an ownership interest in the Property.  At this juncture, then, the Court finds

that plaintiff has adequately alleged that he had a possessory interest, and that defendants seized

the Property.  *See Vienphuong Ti Ho v. City of Long Beach*, No. 19-cv-9430, 2020 WL 8617674,

at *20 (C.D.Cal. Nov. 10, 2020) (concluding that "Defendants have not shown at the pleading

stage that Plaintiff lacked an interest in the disputed real property such that she cannot bring a

claim under the Fourth Amendment for seizure of the land"), *Report and Recom. adopted*, 2020

WL 8608522 (C.D.Cal. Nov. 10, 2020).  Whether a seizure did occur, and if so whether it

violated plaintiff's rights under the Fourth Amendment, cannot be determined at this juncture.  It

remains to be seen whether this claim can withstand a later challenge based on a more complete

record, but defendants' motion to dismiss the claim under Rule 12(c) must be denied.


### E.  Takings Clause of the Fifth Amendment

The Takings Clause of the Fifth Amendment, made applicable to the states through the

Fourteenth Amendment, provides that "private property [shall not] be taken for public use,

without just compensation."  U.S. Const. amends. V, XIV, § 1.  That requirement applies to all

physical appropriations of property by the government.  *See Horne v. Dep't of Agriculture*, 576

U.S. 350, 360 (2015).  "When the government effects a physical appropriation of private property

for itself or another–whether by law, regulation, or another means–a *per se* physical taking has

occurred." *Comm. Housing Improvement Prog. v. City of New York*, 59 F.4th 540, 550 (2d Cir.

2023) (citing *Cedar Point Nursery v. Hassid*, __ U.S. __, 141 S. Ct. 2063, 2071 (2021)).

"In order to state a claim under the Takings Clause, a plaintiff must sufficiently plead:

(1) a protected property interest; (2) that has been taken under color of state law; (3) without just

compensation." *Martell v. City of St. Albans, Vermont*, 441 F.Supp.3d 6, 21 (D.Vt. 2020);

*accord Waltz v. Board of Educ. of Hoosick Falls Cent. School Dist.*, No. 1:12-CV-0507, 2013

WL 4811958, at *6 (N.D.N.Y. Sept. 10, 2013).  The plaintiff must also allege facts showing that

the property was taken for a public use.  *Conyers v. City of Chicago*, 10 F.4th 704, 711 (7th Cir.

2021) (citing *Kelo v. City of New London*, 545 U.S. 469, 477 (2005)).  A Fifth Amendment

taking claim may also be pleaded together with a Fourth Amendment seizure claim.  *See Soldal*,

506 U.S. at 70 ("Certain wrongs affect more than a single right and, accordingly, can implicate

more than one of the Constitution's commands"); *VienPhuong Ti Ho*, 2020 WL 8617674, at *23

("the Court's finding that the [complaint] may state a claim under the Fourth Amendment does

not preclude the Court from finding that the [complaint] states a claim under the Takings

Clause").

In the instant case, plaintiff alleges that he purchased the Property from 89 Public Square

Trust in 2017, and had a deed to the Property.  Although he did not record the deed, the Court

finds that plaintiff has sufficiently alleged that he had a protected property interest.  *See*

*Tomhannock*, 149 A.D.3d at 1221 ("title to property vests upon the execution and delivery of the

deed").

Plaintiff also alleges that defendants took the Property.  Subsequent to plaintiff's

purchase, defendants, acting on behalf of VHDC, were deeded the Property by Wollard.  They

recorded that deed and allegedly changed the locks on the building and told plaintiff that he could not enter the Property or make any changes or repairs to the building.  While it is not clear at this point whose title is superior or whether defendants knew about plaintiff's alleged prior purchase of the Property at the time they obtained their deed, accepting the truth of plaintiff's allegations, defendants' actions plainly amounted to a taking.  It is equally plain that defendants did not compensate plaintiff for the Property.

Although the complaint does not allege why defendants obtained the Property, or what use they intended for it, it is reasonable to infer that it was taken for a public use.  The Village defendants are all in some way connected to the Village government, and VHDC is described in the complaint as a municipal corporation.  Complaint at 6, ¶ 19.  Accepting the truth of plaintiff's allegations, and drawing all reasonable inferences in his favor, the Court concludes that he has stated a claim under the Takings Clause, as to the real property.  *See Tyler v. Hennepin County, Minn.*, 598 U.S. 631, 639 (2023) (describing a "classic taking in which the government directly appropriates private property for its own use") (internal quote omitted).

Plaintiff also asserts a takings claim as to personal property that he allegedly left inside the building.  Plaintiff alleges that after defendants changed the locks, he was unable to retrieve the items, which have never been returned to him.

It is at least questionable whether those allegations are enough to state a claim under the Takings Clause, inasmuch as there is no indication that the items in question were taken for a public use.  Assuming they were taken, that appears to have been merely incidental to defendants' taking of the building.  *See Gauthier v. Kirkpatrick*, No. 13-cv-187, 2013 WL 6407716 at *7 n. 8 (D.Vt. Dec. 9, 2013) (concluding that plaintiff had not alleged a cognizable

takings claim because the plaintiff alleged that his "personal property was stolen, not taken by the government for 'public use'"); *Rowe v. Bell*, No. 08-CV-92, 2009 WL 1766803, at *8 (N.D.Ind. June 19, 2009) (plaintiff's allegation that jail where he was being held  jail allowed shoes, a watch, and a necklace that his father had mailed to him to be lost or stolen did not state a takings claim, since it did not show that plaintiff's property was put to public use); *Kahlily v. Francis*, No. 08 C 1515, 2008 WL 5244596, at *2 (N.D.Ill. Dec. 16, 2008) (allegation that someone, either the defendant police officer or an unidentified person, stole plaintiff's cell phone and money, implied that whoever took the property placed the items in private use, rather than public use, and therefore did not state a claim under the Takings Clause).

Since plaintiff's takings claim may proceed with respect to the real property, however, the Court will permit the claim to go forward with respect to his personal property as well.  As with the Fourth Amendment claim, it remains to be seen whether this claim can survive a dispositive motion based on a more complete record, but at this juncture the claim may go forward.

### F.  Claims against the Individual Village Defendants

Although the complaint names seven individual Village defendants, *i.e.*, individuals who allegedly were officers or employees of the Village, the only two who are actually alleged to have done anything in connection with the underlying events are Vendetti, who allegedly engineered the purchase of the Property from Wollard, and Sansone, who recorded VHDC's deed.  As to the other five individuals–Sorochty, DeFillips, Moroz, Nenni and Lynch–plaintiff simply recites the same boilerplate allegations as to each of them, to the effect that they were acting as agents of the Village, that they conspired with others, that acted "without proper oaths," etc.  Plaintiff alleges

that in October 2019 he sent them letters informing them of what was going on, Complaint at 20 ¶ 38, but there is no allegation that they did or should have done anything in response.[8]

It is well established that to prevail on a claim against a state actor under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation. *Hughey v. Wagner*, No. 23-CV-6270, 2023 WL 6445796, at *2 (W.D.N.Y. Oct. 3, 2023) (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). For that matter, any claim, under § 1983 or otherwise, requires pleading *facts* plausibly showing that the plaintiff is entitled to relief; it is not enough simply to name a defendant and tack on a conclusory assertion that he or she acted unlawfully. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 555. Because plaintiff has not alleged any facts about these five defendants, all his claims against them are dismissed.

## CONCLUSION

The motion for judgment on the pleadings (Dkt. #15) by defendants the Village of Holley, Brian Sorochty, Ron Vendetti, John Sansone, James Defillips, Rochelle Moroz, Connie Nenni, and Kevin Lynch is granted in part and denied in part.

Plaintiff's claims against defendants Brian Sorochty, James Defillips, Rochelle Moroz, Connie Nenni, and Kevin Lynch are dismissed in their entirety.

Plaintiff's fifth, sixth, seventh, eighth, ninth and tenth causes of action are dismissed as to defendants Ron Vendetti and John Sansone.

---

[8] I also note that although defendants' memorandum of law in support of their motion points out the lack of factual allegations about these five defendants, plaintiff's response does not address this matter or contain any further allegations about them.

Plaintiff's first, second, third and fourth causes of action are dismissed as to defendants Vendetti and Sansone, except to the extent that they assert claims of: (1) unlawful search and seizure of plaintiff's real and personal property, in violation of the Fourth Amendment; and (2) a violation of the Takings Clause of the Fifth Amendment.

In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 20, 2023